IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PAUL NORTON, AUDREY FREED, AND
THE LEGAL MARITAL PARTNERSHIP
CONSTITUTED BETWEEN THEM,

Plaintiffs,

v.

AUTORIDAD DE ACUEDUCTOS Y
ALCANTARILLADOS, ET AL,

Defendants.

CIVIL NO. 10-1585 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiffs Paul Norton, Audrey Reed and their conjugal partnership (hereafter "plaintiff Norton") filed an Amended Complaint against defendants, Autoridad de Acueductos y Alcantarillados (hereafter ""PRASA"),[1] a public corporation of the Commonwealth of Puerto Rico, and co-defendant David Traverso-Morales[2], acting under color of state law, for violations of their Fourteenth Amendment constitutional rights and Section 1983 of the Civil Rights Act.  (Docket No. 23, Amended Complaint).

Plaintiff Norton's claims are based on having been denied water services since 2001 to the property built in a plot of land located in Rincón, Puerto Rico, notwithstanding numerous and continuous efforts to obtain same.  Plaintiff Norton submits the neighbors located on the same road and under the same conditions as plaintiff have received access to public water and had their own water and electric meters installed by defendant PRASA,

---

[1]  Puerto Rico Aqueduct and Sewer Authority (PRASA).

[2]  On December 3, 2010, a notice of voluntary dismissal without prejudice was filed as to David Traverso- Morales which was granted by the Court on same day.  (Docket Nos. 12 and 13).

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 2

as well as being regularly invoiced by defendant PRASA for its services.  Plaintiff Norton

claims the services have been denied to him and his wife contrary to others similarly

situated, including a neighbor who built her house in the year 2009.  That is, out of the

three (3) houses built on the same road, plaintiff and his wife are the only ones who have

been denied water.  Plaintiff Norton links said different treatment by a public agency with

being the only one, among those neighbors, who is not of Puerto Rican descent, that is, born

in the continental United States and English speaking, that is, citizens of another state,

Pennsylvania,  who also lacks any type of connection in the municipality of the town of

Rincón or with defendant PRASA as other residents of Puerto Rico.  The Amended

Complaint avers that, after trying, without favorable results, by all legal means to meet the

requirements imposed upon them to obtain the services provided to other similarly situated

individuals, without a rational basis for the difference in treatment, plaintiff Norton was

subject of discrimination under  the Equal Protection of the Law, as well as of intentional

and  purposeful  different  and  unfair  treatment  in  violation  of  the  United  States'

Constitution, Section 1983, and state law provisions.

    After  concluding  discovery  proceedings,  defendant  PRASA  filed  a  Motion  for

Summary Judgment, including material facts not in controversy.  It succinctly alleges that

plaintiff's claim under has failed to establish an intentional discrimination.  From the

allegations and the evidence available, plaintiff may establish solely having attended very

short meetings with defendant, being unable to communicate effectively on the telephone

with officers of PRASA,  and that the two (2) adjacent neighbors, who are of Puerto Rican

descent, have received water service while plaintiff did not.  As such, defendant PRASA

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 3

submits that plaintiff Norton's evidence does not amount to a finding that defendant's actions or inactions were so grossly negligent from which plaintiff could establish he was deprived of a constitutional right and that such deprivation was intentionally made. PRASA further avers it never had the obligation to provide water services to plaintiff Norton's property for, at the time of purchasing the parcel of land, plaintiff knew there was no water service in the property. Additionally, PRASA alleges water services obtained by adjacent neighbors were attained in an illegal manner for which these events would not constitute an action by PRASA that results in an infringement of plaintiff's constitutional rights under the Equal Protection. (Docket No. 54, Motion for Summary Judgment).

Plaintiff Norton filed an opposition to defendant's summary judgment request refuting the allegations that neighbors similarly situated had illegal connections as defendant's grounds for the denial of same services to plaintiff since PRASA knew as far back as 2002 of one of these connections, without ever taking any action to correct the situation. More so, still at the present time in 2012, PRASA continues to offer water services through its water meters and invoices to the now alleged illegal connections. Furthermore, a new home was constructed in 2009 on the same road as plaintiff Norton and said adjacent neighbor also promptly obtained water services from PRASA. Thus, regardless of defendant's allegations to these other water services having been illegally obtained, PRASA continues to provide to these neighbors water services and to bill them while denying the service to plaintiff Norton. As such, plaintiff Norton is in fact the only one on the same road and within the vicinity who has been denied equal treatment and, thus, violated the equal protection under the law warranted to citizens of the United States

by PRASA's selective refusal.  (Docket No. 63, Response in Opposition).  Plaintiff Norton submits the denial of water services, granted to his neighbors equally situated, was issued from the same regional office and upon knowledge of the same PRASA's employees, who have intentionally treated plaintiff Norton different while keeping the neighbors with water connections and service.  Because of this different treatment,  the alleged rational grounds now submitted by PRASA as to illegal connection and the disputed evidence, allows an inference that these reasons are but a pretext for discrimination.  Plaintiff Norton further details the Amended Complaint raises an Equal Protection claim under the theory of "class of one", for still being the only one of those similarly situated who has been denied water services while not being born nor being a resident of Puerto Rico.  Plaintiff Norton also submits state tort law claims under Puerto Rico Civil Code for the acts and omissions of defendant PRASA's employees and supervisors make defendant PRASA vicariously liable in negligently treating citizens similarly situated different under color of state law and in the absence of any rational basis for the difference in treatment.  Plaintiff concludes there are facts in controversy essential to credibility determinations, for which  summary judgment requested by defendant should be denied.  (Docket No. 63, Response in Opposition).

Defendant PRASA's reply indicated plaintiff Norton has failed to deny defendant's statement of facts separately.  In fact, a review of the original motion for summary judgment shows defendant PRASA did not file either a separate statement of its forty-four (44) uncontested facts but included same with its memorandum of law and then enclosed exhibits to support the facts presented  attached as Docket No. 54-1 through 54-8.  (Docket

No. 67, Reply t Response).  Plaintiff's opposition, on the other hand,  refers to its Exhibit 63-1, which includes a sworn statement by plaintiff, as well as an invoice and a letter to support the statement.

Plaintiff Norton filed a sur-reply objecting to defendant PRASA's reply, clarifying some information as to the distance between the water meter and the main pipe required by PRASA's own regulations, instead of the purported distance argued by defendant that is to be considered from the meter to the house and which serves as ground for PRASA's claim of illegal connection as to the neighbors.  The sur-reply addressed, as well, contradictions between PRASA's own witnesses regarding the applications for water meters. Plaintiff finally submits the issue is not whether PRASA had the obligation to install water service to plaintiff's house, but rather it had the obligation to approve plaintiff's water meter the same way it approved two (2) others similarly situated Puerto Rican neighbors lacking a rational basis for refusing to do so.  Insofar as plaintiff's civil rights claim, plaintiff argues that, as citizens of a state other than Puerto Rico and having two (2) adjacent neighbors who are Puerto Ricans, who applied to install water meters in the same nearby location at barely the same distance from the water meter to their houses, plaintiff as the only non-Puerto Rican was the only one who was denied the service and, thus, treated differently.  This different treatment was also reflected when plaintiff called or visited PRASA's facilities and personally addressed public employees therein in the English language, resulting in the call being hung up or if in person at the PRASA's offices having communication which was not effective but rather short and limited and at the end fruitless. (Docket No. 72, Sur-Reply to Reply).

<u>Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al</u>
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 6

---

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178 (1ˢᵗ Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." <u>Cortés-Irizarry v. Corporación Insular</u>, 111 F.3d 184, 187 (1ˢᵗ Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1ˢᵗ Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." <u>Greenburg v. Puerto Rico Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1ˢᵗ Cir. 1987). In fact,

"[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

## UNCONTESTED ISSUES OF FACTS

**A. PRASA'S UNCONTESTED ISSUES OF FACTS**.

Defendant PRASA submits as uncontested that plaintiff Norton purchased a parcel of land located at Barrio Puntas, town of Rincón, Puerto Rico, on December 18, 2000. Plaintiff Norton, who intended to built a home on said plot, then knew there were no water and electric facilities on the property yet noticed that an existing house near the parcel had water facilities and someone told him to follow the same process as such house to get water facilities. (Docket No. 23, ¶7).

In February 12, 2007, having plaintiff Norton built a home and still having no water connection, defendant PRASA endorsed and recommended to the Department of Natural and Environmental Resources ("DRNA") to grant permission to drill a well on the Norton's parcel of land.  The DRNA granted the permit and since the year 2007 the Nortons have had limited water facilities in their home (to a maximum of 120 gallons per day).  (Docket No. 54; Deft's Exhibit 1, Norton's depo., pp. 47, 49, 52; Exhibit 4, PRASA's letter).

Mario Rivera-Santiago (hereafter "Rivera-Santiago") has worked for PRASA for twenty-six (26) years and since 2009 has been temporarily assigned the duties of an investigator.  He is required to visit the sites where a customer has requested water service and to make a recommendation whether the water service could be provided.  In July 2009,

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 8

Rivera-Santiago was assigned to investigate a water service request of Dr. Janette Pérez, the Norton's most adjacent neighbor. (Docket No. 54; Deft's Exhibit 5, Rivera-Santiago's depo, p. 14; Deft's Exhibit 6, Dr. Janette Pérez' statement).   After his visit, Rivera Santiago wrote in the official PRASA form the distance between Dr. Pérez' residence and PRASA's water facilities was twenty (20) feet although in reality it was approximately 2,000 feet away. (Docket No. 54; Deft's Exhibit 5, p. 15; Deft's Exhibit 9, Pagán-Domínguez' depo., p. 9).

Rivera-Santiago acknowledged that, because of the considerable real distance of Dr. Pérez' residence, the water service requested could not be approved. (Docket No. 54; Deft's Exhibit 5, pp. 15-16).  He alleges that, while at the site conducting the investigation as to Dr. Pérez' water service request, someone told him Dr. Pérez was the owner of the land where the pipelines to make the connection would be placed.   He does not know the name of the person who allegedly told him the information, except it was someone from the neighborhood.   (*Id.*, pp. 17, 35, 40).   Rivera-Santiago never told his supervisor Henry Pagán- Domínguez (hereafter "Pagán-Domínguez") of the information allegedly received and admitted that, if he had known Dr. Pérez was indeed not the owner of the land where the connecting pipes would be located, he would not have recommended approval of the application for water service because the distance was too far.  (*Id.*, p. 36).

Dr. Janette Pérez admitted she is not the owner of the property in which the pipelines to connect her property to PRASA's water facilities are located.  When she bought her property in Barrio Puntas, Rincón back on December 28, 1995, she knew there were no water and electric facilities.  (Docket No. 54; Deft's Exhibit 6, Dr. Pérez' statement,).  By April of 2009, Dr. Pérez spoke with a neighbor and friend, Ms. Eva Bonet, for help to get

water services from PRASA.  They went to the City Hall of town of Rincón and obtained an endorsement letter directed to PRASA to obtain water service at Dr. Pérez' property. Dr. Pérez has no recollection of the contents of the letter.  (*Id.*).

Dr. Pérez went with the endorsement letter to PRASA's offices in Aguadilla and submitted a request for water services.[3] Dr. Pérez' request for water services was approved by July of 2009.  Because of the distance from the water meter to PRASA's connection across a private piece of land, Dr. Pérez hired an independent contractor to connect her house through a pipeline commonly known as "fideillo" (noodle).  The owner of the private land gave Dr. Pérez permission to do so. (*Id.*).

In November of 2009, plaintiff Norton realized the construction of a house that was connected to defendant PRASA's water facilities located several hundred feet from said house had been completed.  The neighbor, Dr. Pérez,  informed plaintiff Norton she got water service because of "connections." (Docket No. 23, ¶31; Deft's Exhibit 3, Ms. Audrey Freed's depo., p. 10).

Mr. Henry Pagán-Domínguez has worked for PRASA for twenty-five (25) years and was the direct  supervisor at the time of Rivera-Santiago, PRASA's investigator, who conducted on site inspections to recommend whether installation of water services should be approved.  Pagán-Domínguez had no obligation to visit the site and upon Rivera-Santiago's favorable recommendation, relying on the information provided, he approved Dr. Pérez' request for water services.  Pagán-Domínguez recently visited the site of Dr. Pérez' home area and verified the distance between the meter connection and the house was

---

[3]  The Aguadilla District Office of PRASA handles the water services for the area and is the same location used by plaintiff Norton to seek water services.

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 10

around 2,000 feet, not the twenty (20) feet as it appeared in the form Rivera-Santiago filled out.   (Docket No. 54; Exhibit 8, Pagán-Domínguez' depo., pp. 8-10).

During Pagán-Domínguez' recent visit, it was also found that Dr. Pérez and another house adjacent to her are connected to PRASA's water meter through the "fideillo" pipes that go through a private property.  He testified these connections are considered illegal for the facilities required to make connections are not there and the distance between both houses and the water meters is approximately 2,000 feet.  (*Id.*, pp. 12, 14).

## B.  PLAINTIFF NORTON'S UNCONTESTED ISSUES OF FACTS.

Plaintiff Norton has not particularly denied above uncontested facts presented by defendant PRASA. Still, even if accepting the defendant's undisputed issues as true, Norton submits it is likewise uncontested that the only one (1) out of three (3) other neighbors in the same road and community who was denied water services is plaintiff's property. Regardless if the water connections of these other individuals are administratively considered illegal, PRASA's actions or omissions since the year 2002 legalized the water service in the area for others, except plaintiff Norton, for it has continued to provide water to these other neighbors and to invoice them for such service, while denying plaintiff Norton the same essential service.  Irrespective of the alleged illegality, PRASA has never attempted to disconnect the water service of these neighbors, although having the same commercial offices involved with the situation and even the same employees in the area of Aguadilla, who are aware that plaintiff Norton remains as the only neighbor who lacks water service, generating all kind of situations that have kept the Norton's equal protection claims unresolved.

Plaintiff Norton further avers that he obtained from the Municipality of Rincón, by summer of 2003, that the dirt road to the property be paved and a culvert be built in order to get the water line underneath as indicated by PRASA's employee Marciano Avilés. However, PRASA's response thereafter was to refer plaintiff to the DRNA for a permit to drill a well stating Norton will never be connected to PRASA's water system. As a result, plaintiff has incurred in significant expenses to obtain the water well to work, as well as with the need to acquire additional power panels for the pumps to conduct the water into the house from the well and make water control arrangements on cloudy or rainy days when the solar panels' batteries are not fully charged or when plaintiff receives visits from family and/or friends that increase water consumption. (Docket No. 63; Exhibit 1, sworn statement; Docket No. 23, Amended Complaint, ¶27).

In the year 2011, when Avilés again visited plaintiff Norton's home, he noted the alleged illegal connection of other neighbors as to which PRASA had done nothing since the year 2002. PRASA has thus validated by its inaction the illegality now alleged, as well as through its own actions by assisting neighbors of plaintiff Norton to have water meters installed, obtain and continue to receive water services in their properties while carrying out monthly billing for the services. Thus, plaintiff Norton has been pointing to defendant PRASA all through these years the endeavors to get a water meter, had applied and paid for said meter to be installed, but has still been denied the same services provided to the neighbors under equal conditions.

Plaintiff Norton further alleges that, regardless of PRASA's recent contention that its employee made a false statement or included misinformation in the form that allowed

the neighboring property to obtain water services regardless of the distance from the water service facilities, PRASA has incurred in negligence from its employees and has continued to do so by not corroborating the information in the first place and, thereafter, by taking no action to correct the alleged illegality, thus continuing to allow the disparate treatment towards plaintiff Norton. This is not a situation wherein neighbors have illegal water connections without defendant's knowledge, but rather with defendant PRASA's knowledge and acquiescence, as it continues to provide water service and to send monthly billing statements for water consumption to adjacent neighbors, except for plaintiff Norton.

Plaintiff Norton also states there are material facts in controversy from PRASA's own employees' statements. Rivera -Santiago has testified he spoke with Dr. Pérez back in the year 2009 when conducting an investigation as to the distance of the water meter to the house, concluding it was twenty (20) feet. However, Dr. Pérez stated she received a phone call from Rivera-Santiago by March of 2012. (Docket No. 72-2; Rivera-Santiago's depo., p. 17; Dr. Pérez' statement [as submitted by defendant PRASA at Docket No. 54-6]). Rivera-Santiago stated having discussed the distance of said house with his supervisor Pagán-Domínguez and that the land [over which the pipeline was to run to connect the water facilities] belonged to Dr. Pérez. However, Pagán-Domínguez declared Santiago-Rivera never commented him anything about the investigation dealing with Dr. Pérez. (Docket No. 72-3; Pagán-Domínguez' depo, p. 15). Additionally, Dr. Pérez claims to have visited PRASA's Aguadilla office to request water connection accompanied by the endorsement letter from the municipality of Rincón.

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 13

Meanwhile, Rivera-Santiago testified Dr. Pérez must have submitted all information to prove ownership of the land at PRASA's San Juan Office where she resided. (Docket No. 54-6, [as submitted by defendant PRASA]  Dr. Pérez' statement; Docket No. 72-2, Rivera-Santiago's depo., p.21).  PRASA's claims as to the supporting documentation from Dr. Pérez' water service request and as to PRASA's job installation of Dr. Pérez' water services, have not been produced to plaintiff.  Plaintiff Norton contends these controversies as to testimonies in defendant PRASA's own evidence raise credibility issues that are not proper to be determined by summary judgment.

Plaintiff Norton also avers PRASA's submission as to the illegality of the neighbors' water connections is but a pretext for discrimination.  It is also in dispute  the uncertainty as to the illegality of the water connection because of the distance as submitted by PRASA in regard to whether plaintiff Norton, who is in the same road and the neighbors at issue with water connection.  It is unclear or disputed if such a distance now claimed by PRASA is one from the main pipe to the meter or one from the meter to the house.  This controversy as to the distance as grounds for illegality  arises from Rivera-Santiago's statement that the water meter is within twenty (20) feet from the main pipe not from Dr. Pérez' house.  (Docket No. 72-2,  Rivera-Santiago's depo., pp. 18-21).

PRASA's reply, besides objecting to plaintiff Norton's own statement to support his opposition, refers to lack of evidence as to the Section 1983 claims of discrimination  for plaintiff being an American citizens from the mainland, contrary to adjacent neighbors of

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 14

Puerto Rican descent.  (Docket No. 67, p. 6).[4]  Indeed, plaintiff Norton's sur-reply is very limited in its discussion of evidence of discrimination to support the Section 1983 claim based on being a U.S. continental individual or citizen of another state.  (Docket No. 72, ¶23).  Succinctly, plaintiff has shown he and his wife are citizens of a state other than Puerto Rico and their two (2) adjacent neighbors are natural citizens of Puerto Rico, concluding that under similar circumstances and conditions, the only one who did not get the water meter approved by PRASA was plaintiff and, thus, must be discriminatory.  (*Id.*, ¶24). Plaintiff Norton had also declared how was the different treatment when calling  or personally visiting PRASA's office in that once PRASA's employees heard them talking in English, they would hung up the phone or their oral communications were not effective, but rather short and limited.  The Section 1983 claim is argued as not being a separate claim from the equal protection claim of being subject to difference in treatment, but as a breach of plaintiff's Fourteenth Amendment right, which is also a violation of his civil rights, through the Eleventh Amendment.  (*Id.*, ¶34).

## LEGAL DISCUSSION

Plaintiff's claims are intertwined and were raised under the Fourteenth Amendment, the Eleventh Amendment and Section 1983, as an equal protection claim, in addition to a tort state-law claim. The equal protection action is styled as a "class of one", that is, a claim

---

[4] Defendant PRASA objected in its reply admission of plaintiff Norton's statement under penalty of perjury for it included additional statements to the ones provided in the deposition.  Notwithstanding,  a "party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 961 n. 5 (1st Cir. 1997), *citing* Nereida-González v. Tirado-Delgado, 990 F.2d 701, 706 (1st Cir. 1993). *See also* Santiago Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000).

wherein plaintiff does not claim membership in a class or group, but asserts that defendant impermissibly singled plaintiff out for unfavorable treatment. *See* Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Cordi–Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007).

Claims of discriminatory intent were objected by defendant PRASA because plaintiff, as citizen from a different state or not of Puerto Rican origin, as reflected by a very limited reference by plaintiff Norton to the available evidence and the proffer of uncontested facts circumscribed to such evidence, has no evidence of intentional discrimination.  PRASA submits plaintiff has failed to pass muster as to the reasons for discrimination *per se* resulting from national origin. Still, other grounds as discussed below may support plaintiff Norton's claims, at least at summary judgment level, without any credibility determinations at issue.

The Amended Complaint avers defendant PRASA, through its employees and supervisors, violated plaintiff's Equal Protection rights as presented in the Fourteenth Amendment of the United States Constitution upon having "engaged in an unlawful, intentional and purposeful different treatment against plaintiffs than other similarly situated citizens." (Docket No. 23, ¶35). The gist of an Equal Protection claim requires plaintiff to establish being treated differently to others similarly situated citizens.  Plaintiff Norton submits that "when they [defendants] denied plaintiffs the connection requested to bring water to their home and approving others the same connection in reckless disregard for plaintiffs' constitutional right, under color of state law and with no rational

basis for the difference in treatment. " As such, plaintiff claims he has raised a constitutional Equal Protection claim.

Under these same events, plaintiff Norton has also raised that, by presenting an equal protection constitutional violation, his civil rights under § 1983 were violated for there being state action and he was intentionally treated differently from others similarly situated, without any rational basis for the difference in treatment. *See* Donovan v. City of Haverhill, 311 F.3d 74 (1st Cir. 2002).

## A.      Equal Protection Claim.

A plausible equal protection violation is established when a plaintiff shows by well-pleaded facts that he/she was treated differently from others similarly situated based on impermissible considerations.  To determine whether two or more entities are "similarly situated," it is generally asked "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." "Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." SBT Holdings, LLC v. Town Of Westminster, 547 F.3d 28, 34 (1st Cir. 2008)  (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13,  19 (1st Cir. 1989)).

For example, in Clark v. Boscher, 514 F.3d 107 (1st Cir. 2008),  landowners who were denied access to the city's water and sewer lines for proposed residential subdivisions were considered to have failed to sufficiently allege that they were similarly situated.  The facts related that the other development projects for which the city granted access to the water and sewer lines, as required for plaintiff's to submit an equal protection claim against the

city, were considered in <u>Clark</u> as projects that included affordable housing community and industrial park, which differed significantly from residential subdivision submitted by plaintiff. Thus, the latter triggered different policy grounds for permit approval decision; and said other residential subdivision that was granted access was located on parcel of land that did not pose same concerns of contamination of aquifer as plaintiff/landowner's proposed subdivisions.

As mentioned above, the equal protection action in the instant case is styled as a "class of one", that is, a claim wherein plaintiff does not claim membership in a class or group, but asserts that defendant impermissibly singled plaintiff out for unfavorable treatment. *See* <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); <u>Cordi–Allen v. Conlon</u>, 494 F.3d 245, 250 (1st Cir. 2007).

Clearly, under the Equal Protection Clause, similarly situated persons are entitled to receive similar treatment at the hands of government actors. *See* <u>Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp.</u>, 246 F.3d 1, 7 (1st Cir. 2001). *See* <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). To plead a viable equal protection claim, a plaintiff must allege facts indicating selective treatment compared with others similarly situated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Thus, the difference in treatment regarding water services requested by plaintiff Norton need not be solely predicated on a claim of national origin, but may also rest on malice or bad faith intent to injure.

A court must determine whether plaintiffs were treated differently based on "malicious or bad faith intent to injure a person." *See* Clark, 514 F.3d at 114. The First Circuit Court of Appeals has indicated that cases demonstrating "different treatment" and "evidence of bad faith or malicious intent to injure" are "infrequent." *See* Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d 89, 94 (1st Cir. 1991) (noting that where plaintiff's equal protection claim does not rest on alleged violation of a constitutional right, it is necessary that plaintiff "scrupulously" meet the "malice/bad faith" element of its claim.).

The Supreme Court determination in Village of Willowbrook v. Olech, 528 U.S. 562, affirmed that the Equal Protection Clause protects individuals, as well as vulnerable groups and fundamental rights from vindictive state action. This approach to Equal Protection jurisprudence is referred to as a "class of one" claim. Under this theory, individuals like in Olech, who have been victimized by state or local officials, but who do not have a claim under a traditionally recognized Equal Protection category, can file a claim in federal court under Title 42, United States Code, Section 1983. These claims arise when a state or local government official inequitably administers a state statute or local ordinance. They often occur in the context of land use, zoning, licensing, and the provision of governmental services. *See* Nicole Richter, *a Standard for "Class of One" Claims under the Equal Protection Clause of the Fourteenth Amendment: Protecting Victims of Non-class Based Discrimination from Vindictive State Action,* 35 Val. U. L. Rev. 197 (Fall 2000).[5] It has been deem an open question after Olech whether animus or, more broadly, improper

---

[5] *See also* Sheldon Nahmood, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983 §3.85* (Sept. 2012).

personal motivations are required in a class-of-one case. *See* Cordi–Allen v. Conlon, 494

F.3d 245 (1ˢᵗ Cir. 2007);[6] *see also* Del Marcelle v. Brown County Corp., 680 F.3d 887 (7ᵗʰ

Cir. 2012).

Turning to the instant case, plaintiff Norton has clearly established as an undisputed

fact that the comparing neighbors, who received defendant's permit and/or services license

and plaintiff, were extremely similar as to their applications, documentation, and location;

that is, similarly situated in all relevant aspects.  However, plaintiff Norton has also

presented disputed issues of material fact as to PRASA's justification for said disparate

treatment.  PRASA has submitted as grounds to deny water service, the illegality of the

connections of the adjacent neighbors and its own regulation regarding the required

distance from the water meter to the water facilities or from the location itself.  Plaintiff

Norton raised, through the claim and evidence in opposition to summary judgment, triable

issues of fact in regards to the situation that is faced by many individuals as the result of

irrational or unjustified treatment by state or local government officials sufficient to meet

the prong of an Equal Protection claim.

It is then undisputed that herein plaintiff Norton is evidently on equal footing to all

other adjacent neighbors in the area and even located on the same road as those who were

granted water services by defendant PRASA.  It is also uncontested that plaintiff Norton is

---

[6] We need not reach any question of whether, post-*Olech,* a plaintiff must demonstrate malice or bad faith intent to injure when there is no discrimination based on typically impermissible categories. *See* Bizzarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005). For present purposes, it suffices to say that the plaintiff therein failed to satisfy the "similarly situated" requirement. *See* Cordi-Allen, 494 F.3d 250 n.3.

able to prove substantial similarity of individuals or entities that allegedly received more favorable treatment by PRASA.  Additionally, plaintiff has raised sufficient evidence to allow triable issues as to a violation of Equal Protection Clause after having presented disputed facts as to PRASA's reasons being pretextual.  Thus, summary judgment is not warranted.

**B.     Section 1983 Claim.**

Insofar as plaintiff's claim of a Section 1983 violation, the Amended Complaint submits "defendants also violated plaintiff's civil rights warranted under 42 U.S.C. §1983, when under color of state law, they deprived plaintiffs of their rights and privileges secured by the U.S. Constitution.  Plaintiffs are entitled to the Equal Protection of the law and to receive the same treatment as the citizens of the Commonwealth of Puerto Rico." (Docket No. 23, ¶42).  As such, when dealing with a Section 1983 claim, a plaintiff must categorize the allegations of discrimination from individuals or persons who were acting under color of law.  *See* Aponte-Torres v. University Of Puerto Rico, 445 F.3d 50 (1st Cir. 2006).

A section 1983 action must establish two elements: (1) the conduct complained of was carried out under color of state law and (2) this conduct deprived appellants of rights, privileges or immunities secured by the Constitution or laws of the United States.  *See* Chiplin Enters. v. City of Lebanon, 712 F.2d 1524, 1526-27 (1st Cir. 1983).[7]

Resolving the constitutional issue under the Equal Protection, and as to above discussed elements, would similarly translate to the civil rights Section 1983 based on same

---

[7]    If a constitutional violation is not established, plaintiff Section 1983 claim would be meritless.

violation for the rights are held coextensive with the Equal Protection Clause. *See* Mescall v. Burrus, 603 F.2d 1266, 1271 (7th Cir. 1979) ("The relationships of ... and §1983 to the Fourteenth Amendments are so close ... that we believe the use of each section must be guided by principles announced by the Supreme Court for application of the Fourteenth Amendment to discrimination cases." *See* Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71, 77 n. 7 (1st Cir. 2004) (concluding that plaintiffs' claims under Title VI, § 1981 and § 1983 "turn on the resolution of the equal protection claim").

As discussed by defendant PRASA for summary judgment purposes, plaintiff Norton has not shown having direct evidence as to defendant PRASAs' animosity, ill-will, or bad faith toward plaintiff, except for the perception that when the employees heard them on the phone talking English the call was dropped or hung and when the plaintiff went personally to the PRASA's Aguadilla office  the conversations were short.  On one side, this conduct which plaintiff Norton has considered discriminatory because of  not being of Puerto Rican descent but rather as citizen of another state in the continental United States, may also be explained in that PRASA's employees conduct may have been caused by the English language barrier prevalent in the community and their  inability to understand plaintiff's conversation.

On the other side, regardless of a seemly national origin discrimination fading, plaintiff Norton has also presented disputed facts showing being subject to selective treatment by defendant PRASA, that is, being denied water services while others similarly situated and under equal conditions were granted such services, and even to the present

time from 2002 through 2012 the other adjacent neighbors have continued receiving PRASA's water services and being invoiced monthly.  Normally, a plaintiff alleging an equal protection claim based on malicious or bad faith intent to injure a person, and consequently a Section 1983 based on an Equal Protection clause violation, must establish more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish that the defendant's actions constituted a gross abuse of power.  *See* Tapalian v. Tusino, 377 F.3d 1 (1st Cir. 2004).  The First and Second Circuits have recognized "class of one" claims under the theory of selective enforcement, which also grounds plaintiff Norton's Section 1983 claim.[8]

Plaintiff Norton has contested and raised disputed facts as to PRASA's selective enforcement reasons being based on PRASA's alleged regulations to deny water services in the Norton's property, while allowing other nearby neighbors, similarly situated, to obtain water meter, receive water services and continue receiving monthly billing.  There are contested issues of material fact of PRASA's reasons to refuse service to plaintiff under the factual situation in this case.

Abuse of power and selective enforcement often arise in governmental administration of regulatory schemes and programs whereby the government interprets and applies its own rules.  How government selectively enforces its regulations may result from a variety of reasons: political, personal, discrimination, retaliation, arbitrary and some

---

[8]
     Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006); Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995) (discussing summary judgment on selective enforcement action for those equally situated); LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir.1980); Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494 (2d Cir. 2001).

at whim, which may amount to abuse of power. Selective enforcement is a recognized subset of equal protection. *See* 16B Am Jur 2d Constitutional Law, section 889, *What Constitutes Selective Enforcement or Discriminatory Administration* (1998); J. Michael McGuinness, *Jack Booted Government Thugs Beware: Litigating Equal Protection and Selective Enforcement Claims*, printed in Fifteenth Annual Section 1983 Civil Rights Litigation Handbook, 619 Practicing Law Institute 623 (1999). Henceforth, what circumstances do such selective enforcement or disparate treatment become constitutionally actionable under the Equal Protection Clause and/or Section 1983 violation is a factually charged determination.[9]

When disputed facts are at issue, summary adjudication is not a proper vehicle. Although the case is not an easy task for plaintiff Norton as to discriminatory intention, a reasonable jury may well be able to conclude that, because of the long time span that has elapsed, together with plaintiff's numerous attempts and obstacles faced to be considered by PRASA for a water service to their property, to which the adjacent neighbors had easily and expeditiously received under equal situation, there is circumstantial evidence of concerted action involving a number of officials at PRASA's Aguadilla district office that allowed the selective enforcement against plaintiff of their now proposed regulations, its interpretation and recently proposed justification, as well as acts or omissions --whether due to politics, connections, friendly relationships or else– that could amount to malice or a gross abuse of power. Whether after the full presentation of evidence plaintiff Norton still

---

[9] J. Michael McGuinness, *the Impact of Willowbrook on Equal Protection and Selective Enforcement Claims*,641 PLI/Lit 469 (2000).

Paul Norton et al. v. P.R. Aqueduct & Sewer Authority, et al
Civil No. 10-1585 (CVR)
Opinion and Order
Page No. 24

falls short and is subject to a directed verdict remains to be seen. However, at the stage of summary judgment, being this court obliged to draw all reasonable inferences for the non-movant and not to rely on credibility determinations, and there being issues of fact in controversy, summary judgment is not warranted. *See* Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995).[10]

Finally, defendant PRASA also raised that the state law claims for damages under the Puerto Rico Civil Code should not be considered for they rest on mere arguments of counsel without evidence of any negligent act or omission by PRASA that could be connected to the alleged damages claimed by plaintiff Norton. The same contentions as to the illegal connection of the neighbors are alleged, as well as reference to one of its own employees having provided false information to induce a supervisor to approve Dr. Pérez' water connection. Credibility determinations and contested issues of fact are issues as to these state tort claims as well. As such, summary judgment is not appropriate.

**CONCLUSION**

In view of the foregoing, defendant's request for summary judgment filed by defendant PRASA is DENIED. (Docket No. 54).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of September of 2012.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE

---

[10]   Material issues of fact, precluding summary judgment, exist as to whether officials' selective enforcement of code provisions violated plaintiff's  equal protection rights.